UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Diana Lynn Carpenter

Plaintiff,

v.

Northwest Airlines, Inc.,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-2490 ADM/AJB

---

Diana L. Carpenter appeared pro se.

Tracy J. Van Steenburgh, Esq., Halleland, Lewis, Nilan, Sipkins & Johnson, appeared for and on behalf of the Defendant.

---

## I. INTRODUCTION

The above-entitled matter came on for hearing before the undersigned United States District Judge on May 9, 2001, pursuant to Defendant's Motion to Dismiss [Doc. No. 14]. For the reasons set forth below, the motion is denied.

## II. BACKGROUND[1]

Plaintiff Diana L. Carpenter ("Carpenter") brings Title VII[2] claims alleging that Defendant Northwest Airlines, Inc. ("Northwest") discriminated against her on the basis of her race and religion when they demoted her and reassigned her to a new position. Carpenter began working for Northwest in 1974. Compl. at 6. In May 1999, Carpenter moved into the position of

---

[1]On a motion to dismiss, a complaint's factual allegations must be accepted as true. *See Patterson v. Von Riesen*, 999 F.2d 1235, 1237 (8th Cir. 1993). The following facts are as stated by Carpenter in the Complaint.

[2]Carpenter also references in her form Complaint claims for defamation and violation of the Family Leave Act of 1993, 29 U.S.C. §§ 2601-2654, against Northwest.

JUN 0 7 2001
FILED
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

overtime supervisor. *Id.* Her supervisor, Daniel Boyle ("Boyle"), allegedly treated Carpenter differently than the previous overtime supervisor. Compl. at 6-7. In her first two months in this position, Northwest audited Carpenter's work performance twice. *Id.* at 6-7. Soon thereafter, Carpenter met with Laura Masuda ("Masuda"), who also oversees the overtime supervisor position, to discuss errors uncovered by the audits. *Id.* at 7; Masuda Aff. ¶ 1.

On August 5, 1999, Carpenter went on a planned vacation and underwent treatment for a medical condition. Compl. ¶ 1. She and her doctor concluded that she should undergo surgery. *Id.* Accordingly, Carpenter submitted a family sick leave request with Masuda. *Id.* at 7-8. When Carpenter returned from her vacation/family sick leave on November 2, 1999, Boyle questioned her about errors in her work. *Id.* at 8. The next day, Boyle told her that she was disqualified as overtime supervisor because of her work performance. *Id.* at 8. Northwest initially put her on "layoff" status. *Id.* Northwest later reassigned her to a non-supervisory position and chose not to hire her for another supervisor position, allegedly in contravention of the collective bargaining agreement ("CBA") between her union and Northwest. *Id.* at 3, 8, 12.

## III. DISCUSSION

### A. Railway Labor Act Preclusion

Northwest avers that because Carpenter's Title VII claims concern the CBA, they are precluded by the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151-188, and its mandatory arbitration provision. Just as a federal law may preempt a state law claim, one federal law may preclude[3], or displace, the application of another federal law. Like preemption, preclusion of a

[3]While the Railroad Labor Act "preempts" state law, the appropriate term is "preclusion" where it is a federal law that is being displaced. *Stokes v. Norfolk S. Ry. Co.*, 99 F.Supp.2d 966, 969 n. 1 (N.D. Ind. 2000) (citation omitted).

federal law depends upon Congress' intent in passing the legislation at issue. *Saridakis v. U.S.*, 166 F.3d 1272, 1276 (9th Cir. 1999) (citation omitted). Here, the question is whether Congress intended the RLA's mandatory arbitration scheme to preclude Carpenter from bringing her Title VII action. *See id.*

As an airline, Northwest's activities are regulated by the RLA. *Airline Stewards and Stewardesses Assoc. v. Northwest Airlines*, 267 F.2d 170, 173 (8th Cir. 1959). Congress passed the RLA to engender stability in labor relations by "providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) (citations omitted). The RLA requires that two classes of disputes, major disputes and minor disputes, be arbitrated according to a specific procedure. 45 U.S.C. § 151a.

Northwest alleges that Carpenter's Title VII claims are minor disputes and must be arbitrated under the RLA. While "major" disputes concern the "rates of pay, rules or working conditions", "minor" disputes "grow out of grievances or out of the interpretation or application of agreements covering rates of pay, rules or working conditions." *Hawaiian Airlines*, 512 U.S. at 252 (quoting § 151a). Thus, minor disputes are "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." *Id.* Moreover, a minor dispute "may be *conclusively* resolved by interpreting the existing agreement." *Consol. Rail v. Ry. Labor Executives' Assoc.*, 491 U.S. 299, 305 (1989) (emphasis added).

As noted by the Tenth Circuit in *Adams v. American Airlines, Inc.*, No. 98-5118, 2000 WL 14399, at *7 (10th Cir. Jan. 10, 2000), RLA preemption/preclusion "is a complicated issue marked by somewhat imprecise and often conflicting language in the cases that discuss it." For example, while the Eighth Circuit has held that a claim under the Age Discrimination in

Employment Act was precluded because it was "inextricably intertwined" with the collective bargaining agreement, *Schiltz v. Burlington N. R.R.*, 115 F.3d 1407, 1415 (8th Cir. 1997), the Supreme Court has held that the RLA does not preempt causes of action to enforce rights that are "independent of" the collective bargaining agreement, *Hawaiian Airlines*, 512 U.S. at 256. *See Adams*, 2000 WL 14399, at * 7.

The Eighth Circuit has held that discrimination claims are not precluded/preempted by the RLA if the claims arise from federal or state law. *Deneen v. Northwest Airlines, Inc.*, 132 F.3d 431, 439 (8th Cir. 1998) (Title VII); *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1115 (8th Cir. 1995) (ADA); *Taggert v. Trans World Airlines, Inc.*, 40 F.3d 269, 274 (8th Cir. 1994) (state law); *Norman v. Mo. Pac. R.R.*, 414 F.2d 73, 83 (8th Cir. 1969) (Title VII); *see also Ludwig v. Northwest Airlines, Inc.*, 98 F.Supp.2d 1057, 1068-69 (D. Minn. 2000) (Title VII); *Stevens v. Braniff Airways, Inc.*, 490 F.Supp. 231, 233 (D. Minn. 1980) (Title VII); *contra Schiltz*, 115 F.3d at 1415 (ADEA); *Hogan v. Northwest Airlines*, 880 F.Supp. 685, 688-90 (D. Minn. 1995) (ADA). Title VII and other discriminatory statutes are not precluded by the RLA because they "exist independent of the collective bargaining agreement." *See Felt v. Atchison, Topeka & Santa Fe Ry. Co.*, 60 F.3d 1416, 1419-20 (9th Cir. 1995) (quoting *Hawaiian Airlines*, 512 U.S. at 260); *accord Taggert*, 49 F.3d at 274. This is true even if the alleged discrimination is the denial of rights or benefits from the CBA. *See Hiatt v. Union Pac. R.R. Co.*, 65 F.3d 838, 840-41 (10th Cir. 1995); *Felt*, 60 F.3d at 1419, *Horton v. Norfolk S. Corp.*, 102 F.Supp.2d 330, 333-38 (M.D.N.C. 1999); *Stokes*, 99 F.Supp.2d at 971-72; *Blakely v. US Airways, Inc.*, 23 F.Supp.2d 560, 572 (W.D. Pa. 1998). For example, there is no RLA preclusion where the alleged discrimination is the denial of CBA "bumping" rights, 99 F.Supp.2d at 971-72, or where

the plaintiff may have to prove that he or she is eligible and qualified under the CBA for a certain position. 23 F.Supp.2d at 572.

Carpenter's claim is not precluded because Title VII exists independent of the CBA. *See Hawaiian Airlines*, 512 U.S. at 260. Similarly, there is no preclusion here because the "CBA is not the 'only source'" of Carpenter's right to be not demoted because of discrimination, *see id.* at 258, and her Title VII claim cannot "be conclusively resolved by interpreting the existing [CBA]." *See Consol. Rail*, 491 U.S. at 305. In a case under an anti-discrimination statute, the major factual issue is the defendant's motive in taking the adverse employment action and not the provisions of the CBA. *See Lennon v. Finegan*, 78 F.Supp.2d 258, 259 (S.D.N.Y. 2000). Thus, where there is a statutory basis for the claim, the "major/minor dispute" analysis becomes irrelevant. *Stokes*, 99 F.Supp.2d at 971. In *Norman v. Missouri Pacific Railroad*, 414 F.2d at 82-83, the Eighth Circuit stated:

> We think the earlier cases clearly demonstrate and hold that the Railway Labor Act had not preempted jurisdiction over all racially based grievances arising out of the operation of the railroads nor is it set up to determine all types of racial complaints. . . We, therefore, do not think the plaintiffs are confined to their administrative remedies. . . The enactment of Title VII provides a more extensive and broader ground for relief, specifically oriented towards the elimination of discriminatory employment practices based upon race, color, religion, sex or national origin.

Carpenter's Title VII claims are not precluded by the RLA.[4]

**B. Arbitration Agreement**

Northwest also alleges that Carpenter's claims are subject to a valid arbitration agreement

---

[4]Northwest's decision to rely on a New York District Court case rather than citing and attempting to distinguish the controlling precedent in this jurisdiction, *Norman* and *Deneen*, is troubling. *See* ABA Model Rules of Prof'l Conduct R. 3.3.

between the parties. First, Northwest asserts that Article 16(A) of the CBA requires that Carpenter arbitrate "statutory claims". Northwest's Memorandum includes the following quotation of Article 16(A): "complaints and grievances arising out of the interpretation or application of the provisions of [the] Agreement. . . must be arbitrated." Northwest selectively omits the phrase "contract dispute" that appears in Article 16(A) after the word "agreement". Additionally, the words "must be arbitrated" do not appear in Article 16(A). The use of the words "interpretation or application" and "contract dispute" make clear that this language discusses the RLA arbitration process. Carpenter's Title VII claims are not a "contract dispute" that must be arbitrated pursuant to the RLA. Accordingly, Article 16(A) does not require arbitration of the Title VII claims.

Second, Northwest alleges that Carpenter, as a union member, agreed to be governed by Northwest's rules and regulations, including its 1996 Discrimination and Harassment Policy ("Policy"). Northwest asserts that the Policy requires that Carpenter's Title VII claims be arbitrated. Northwest cites the following language from the Policy, ". . . discrimination, harassment, or retaliation claims under . . . Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. . . . or any other local, state or federal law prohibiting discrimination, shall be resolved by binding arbitration." Def.'s Mem. Supp. at 2-3 (citing Van Steenburgh Aff. Ex. A at 6-7). Again, Northwest has engaged in selective quotation. Earlier in the *same sentence* as the aforementioned phrase, the Policy specifically limits this language to salaried employees. Van Steenburgh Aff. Ex. A at 6-7. The same page of the Policy includes a paragraph concerning arbitration that is applicable to non-salaried employees. Here, the Policy itself states that its arbitration procedure does not substitute for the CBA procedure where non-salaried employees

are involved. *Id.* Ex. A at 7.

> Employees covered by a collective bargaining agreement shall comply with the grievance and arbitration provisions in the applicable collective bargaining agreement. This procedure is not intended to substitute for, detract from or supersede in any way a grievance procedure provided in any collective bargaining agreement between Northwest Airlines and any union.

*Id.* Ex. A at 7. Carpenter alleges, and Northwest does not dispute, that she is not a salaried employee. Thus, at a minimum, there is a fact issue as to whether or not the provisions cited by Northwest apply to Carpenter. Accordingly, Northwest's Motion to Dismiss is denied.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that: Defendant's Motion to Dismiss [Doc. No. 14] is **DENIED**.

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: June 7, 2001