UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Diana Lynn Carpenter,

Plaintiff,

v.

Northwest Airlines, Inc.,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-2490 ADM/AJB

---

Diana Lynn Carpenter, *pro se*.

Tracy J. Van Steenburgh, Esq., Halleland, Lewis, Nilan, Sipkins & Johnson, P.A., Minneapolis, MN, appeared for and on behalf of Defendant.

---

## I. INTRODUCTION

On November 29, 2001, the Motion for Summary Judgment [Doc. No. 34] of Defendant Northwest Airlines, Inc. ("Northwest"), was argued before the undersigned United States District Judge. Plaintiff Diana Lynn Carpenter ("Plaintiff") sued Northwest alleging race discrimination, religious discrimination, violation of the Family Medical Leave Act ("FMLA"), retaliation, and defamation in connection with her disqualification as an overtime equalization supervisor at Northwest. For the reasons set forth below, the Summary Judgment Motion is granted.

## II. BACKGROUND

Plaintiff became an employee at Northwest in 1973. Pl. Mem. at 2. Since September, 1975, she has worked almost exclusively in the Reservation Sales Department. At all times relevant to this case, Plaintiff has been a member of a collective bargaining unit represented (since 1986) by the International Association of Machinists and Aerospace Workers ("IAM"). The terms and conditions

FEB 05 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD FEB 05 2002
DEPUTY CLERK

of her employment are governed by a collective bargaining agreement ("CBA") between Northwest and the IAM. Carpenter Dep. at 10:11-16.

Beginning on May 15, 1999, Plaintiff worked as an overtime equalization supervisor ("OT supervisor").[1] Plaintiff was awarded this position by successfully bidding her seniority under the CBA. Previously, Denise Gates ("Gates"), a reservation sales supervisor, had performed the OT supervisor duties. Under the IAM agreement, if the overtime opportunities are not equalized between all reservation agents within the thirty hour range at the end of the year, an employee may claim additional pay for that year. Masuda Aff., Ex. A. Northwest asserts that it was not required to make any of these payouts in 1997 or 1998 while Gates was OT supervisor. Def. Mem. at 4. Northwest also asserts that when Plaintiff replaced Gates on May 15, 1999, Gates' work was "closed out" after a review showing Gates' record keeping and data entry work to be accurate, creating a "clean slate" starting point for Plaintiff. Id. Plaintiff alleges that while Gates was in the position, 1168 hours of errors occurred, and argues that it was racial discrimination to disqualify Plaintiff for her work performance when Gates, a Caucasian, was not disqualified for having committed errors.[2]

About six weeks after assuming the OT supervisor duties, Plaintiff's managers began observing problems with her performance. Plaintiff was taking an excessive number of "trade days," and a routine monthly audit in June, 1999, revealed multiple errors in Plaintiff's work. Masuda Aff.;

---

[1] The OT supervisor is responsible for inputting data for purposes of tracking overtime opportunity utilization. The position's duties include maintaining reservation agent schedules and work functions in a database, conducting overtime call-outs, collecting overtime sign-up sheets, manually crediting overtime, keeping accurate records to ensure a zero pay out at the end of the year, correcting errors discovered during monthly audits, and working with managers to create assistant schedules. Masuda Aff., Ex. B.

[2] Although Plaintiff's argument involves a factual dispute, it does not create a genuine issue of material fact bearing on the resolution of this Motion. See infra. Part III.B.i.

Carpenter Dep. at 116:3-117:22. Northwest discovered further errors in August, 1999. More specifically, it was discovered that not all the appropriate agents were contained in the database, some agents were incorrectly included, agents were credited incorrectly, some agents' information had been entered using the wrong shift, hours, and days off, and overtime had gone uncredited. Masuda Aff.; Boyle Aff. On August 5, 1999, Plaintiff left for vacation, leaving a backup supervisor to correct the errors. Carpenter Dep. at 133:23-25, 130:14-16. The record during Plaintiff's tenure in the position showed Northwest's overtime liability to be 6,212.2 hours, but after Northwest corrected the errors it determined the actual liability to be only 2,545.5 hours. Boyle Aff. Plaintiff contends that she was only given two and a half months to train for the new position, rather than the four months she was entitled to under the IAM contract. Pl. Mem. at 6. Plaintiff asserts Northwest's expectations of her were not reasonable. Id. at 9.

After her vacation, Plaintiff took FMLA leave from August 26 to November 2, 1999. Immediately upon returning to work Plaintiff was called to a meeting with her manager and two union stewards to discuss the quality of her work. The following day Plaintiff was informed that she was being disqualified as a supervisor for performance reasons under the terms of the CBA. Boyle Aff., Ex. B. Plaintiff was given the option of working an open agent position or being placed on lay-off status, and she chose the latter. Carpenter Dep. at 171:25-172:5.

Plaintiff grieved her disqualification from the OT supervisor position, and the Board of Review determined on November 30, 1999, that her disqualification as a supervisor would be reduced to a formal coaching for work performance.[3] The Board also determined that Plaintiff would

---

[3] Although Plaintiff disputes this, arguing that "[t]here was no formal coaching," she fails to present any evidence in the record sufficient to create a material fact issue.

be placed in an open supervisor position, with a prohibition on re-bidding for the OT supervisor position for one year. Plaintiff was also paid the difference between agent and supervisor pay for the time period between November 4, 1999, to December 3, 1999. Carpenter Dep. at 152:17-153:2; Boyle Aff., Ex. D.

Plaintiff then accepted the open supervisor position offered to her, but applied for a leave of absence beginning on the day she was to return to work because the new position did not carry Sundays and Mondays as regular days off. Carpenter Dep. at 180:4-22, 181:2-7. Plaintiff requires Sundays off because she is a "born-again Christian" who has ministered since 1974. Pl. Mem. at 13. Plaintiff has not worked for Northwest on any Sunday (prior to her demotion) since 1975. Id. Plaintiff remained on leave until April 2, 2000, because "she was too embarrassed to comfortably show her face at work and the conflict of not having Sunday's off put her personal life in a precarious situation." Id. Plaintiff's claim of religious discrimination is based on her theory that Northwest knew of her ministry and could have bumped a less senior employee who had Sundays off and given Plaintiff that employee's schedule.

In December, 2000, Plaintiff bid for, and was awarded, an operations supervisor position with Sundays and Mondays off. Plaintiff seeks damages for the one year period in which she was unable to re-bid for her prior position because of the alleged discriminatory behavior of Northwest.

## III. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). Further, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment . . . . Instead, 'the dispute must be outcome determinative under prevailing law.'" Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citation omitted). Moreover, a plaintiff facing a summary judgment motion cannot "get to a jury without any significant probative evidence tending to support the complaint." Rath v. Selection Research, Inc., 978 F.2d 1087, 1091 (8th Cir. 1992) (quoting Anderson, 477 U.S. at 249). In addition, "summary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some evidence that might tend to support a complaint." Krenik, 47 F.3d at 959.

**B. Discrimination**

Where a plaintiff relies on circumstantial, as opposed to direct, evidence of intentional discrimination, the Court applies the three-stage burden shifting approach developed by the Supreme Court in McDonnell Douglas v. Green, 411 U.S. 792 (1973), and later refined by the Court in Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993); Dammen v. UniMed Medical Center, 236 F.3d 978, 980 (8th Cir. 2001). Under this framework, the plaintiff bears the initial burden of presenting a prima facie case of

discrimination. Dammen, 236 F.3d at 980. If the prima facie case is established, a legal presumption arises that the employer unlawfully discriminated against the plaintiff. Id. This rebuttable presumption shifts the burden[4] to the employer to produce evidence that the plaintiff was rejected (or someone else was preferred) for a "legitimate, nondiscriminatory reason." Id. If the employer articulates such a reason, the presumption disappears and the McDonnell Douglas framework becomes irrelevant. The sole remaining issue is whether the employer discriminated. Id. The plaintiff then has an opportunity to prove, by preponderance of the evidence, that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id.

**i. Race Discrimination**

To establish a prima facie case of racial discrimination under § 1981, a plaintiff must show: (1) she is a member of a protected class; (2) she is qualified for the position; (3) she suffered an adverse employment action; and (4) some evidence that would allow the inference of improper motivation. Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 259-260 (8th Cir. 1996). Plaintiff fails to meet her burden of establishing a prima facie case of race discrimination. To constitute an adverse employment action, an action must involve "a diminution in title, salary or benefits." Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir. 1994). After grieving her disqualification, Plaintiff was reinstated to the supervisor position, and paid back-pay equivalent to the amount of a supervisor position. "Changes in duties or working conditions that cause no materially significant disadvantage . . . are insufficient to establish the adverse conduct required to make a prima facie

[4] This framework only shifts the burden of production; the burden of persuasion rests at all times with the plaintiff. Id.

case." Id. Plaintiff failed to produce sufficient evidence of adverse employment action.

Plaintiff also has offered no evidence that other, similarly situated white employees were treated differently. The only two OT supervisors at issue are Gates and Plaintiff, and there exist differences between the work performance of Gates and Plaintiff. No evidence was presented showing that Gates was responsible for the 1168 hours not utilized as targeted overtime in 1996. Boyle Aff., Ex. C. Further, Gates' performance in 1997 and 1998 appears to have been satisfactory. Thus, the two employees are not similarly situated.[5]

Even if Plaintiff established a prima facie case, Northwest has articulated a non-discriminatory reason for Plaintiff's disqualification, namely, poor performance. There is no evidence of any discriminatory animus by Northwest sufficient to establish a pretext. Northwest's Motion for Summary Judgment on the race discrimination claim is granted.

**ii. Religious Discrimination**

To establish a prima facie case of religious discrimination, Plaintiff must prove: (1) she had a bona fide religious belief that conflicted with an employment requirement; (2) she informed Northwest of her belief; and (3) she suffered an adverse employment action. Seaworth v. Pearson Autobody, 203 F.3d 1056, 1057 (8th Cir.), cert. denied, 531 U.S. 895 (2000). Northwest does not contest whether or not Plaintiff has a bona fide religious belief. However, Plaintiff does not proffer specific evidence of having informed Northwest of her religious beliefs requiring her not to work on Sundays. She states only that Northwest was "aware" of her being a Christian. Pl. Mem. at 12. As explained above, Plaintiff has not demonstrated that she suffered an "adverse" employment

---

[5] The documented performance issues of concern to Northwest also cast doubt on whether Plaintiff could meet the prima facie case requirement of being qualified for the position.

action. Thus, Plaintiff fails to establish a prima facie case of religious discrimination. Even if a prima facie case were established, Northwest has articulated a non-discriminatory performance-based reason for the disqualification. No evidence sufficient to establish a pretext was offered by Plaintiff. Northwest's Motion for Summary Judgment on the religious discrimination claim is granted.

**C. FMLA Claim**

Under the FMLA, an employee returning from family or medical leave must be restored "to the position of employment held by the employee when the leave commenced," or to a position with equivalent benefits and pay. 29 U.S.C. § 2614(a)(1). Plaintiff claims that because she was "intercepted" and called to the meeting shortly after arrival when she returned from leave on November 2, 2000, she was effectively not restored to her OT supervisor position. Pl. Mem. at 15. It is undisputed that Plaintiff was disqualified for performance reasons on November 3, 2000. However, on November 2 she did report to work in her previous position as OT supervisor, and it was from this position that she was disqualified on November 3 for performance reasons. Disqualification from a position for performance reasons, which would be valid in the absence of FMLA leave time, does not constitute a violation of the restoration provisions of the FMLA simply because it occurs after the employee returns from FMLA leave. Hatchett v. Philander Smith College, 251 F.3d 670, 677 (8th Cir. 2001) ("An employee is only entitled upon return from leave to that which she would have been entitled absent the leave time"). Plaintiff has failed to articulate an FMLA violation by Northwest. Summary Judgment is granted on the FMLA claim.

**D. Retaliation**

Finally, Plaintiff alleges retaliation under Title VII. Title VII requires a plaintiff to bring a charge of discrimination before the EEOC within 300 days of the alleged discriminatory act. 42

U.S.C. § 2000e-5(e)(1). Plaintiff did not file a charge alleging reprisal discrimination with the EEOC; her EEOC charge only alleged race and religious discrimination. Def. Mem. at 17. Reprisal claims must be dismissed if a plaintiff does not specify that he or she is alleging reprisal discrimination within the charge itself. Stuart v. General Motors Corp., 217 F.3d 621, 631 (8th Cir. 2000). Plaintiff argues her evidence of retaliation is her increased blood pressure. While this may be a manifestation of stress, it is insufficient to support a claim. Pl. Mem. at 16. Summary Judgment is granted on the retaliation claim.

**E. Defamation**

In order for a statement to be considered defamatory it must be communicated to someone other than the plaintiff, it must be false, and it must tend to harm the plaintiff's reputation and to lower her in the estimation of the community. Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 255 (Minn. 1980). Plaintiff claims that Northwest provided untrue information to the EEOC in response to her charge, but fails to identify any statements or claims made by Northwest that constitute "untrue information," or tend to harm her reputation. A defamation claim must be pled with specificity. Thompson v. Campbell, 845 F.Supp. 655, 679 (D. Minn. 1994). Northwest's Motion for Summary Judgment on the defamation claim is granted.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Northwest's Motion for Summary Judgment [Doc. No. 34] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date: February 5, 2002

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.